# Richmond

## County School Board of Hanover County v. Samuel W. Shelton.

June 18, 1956.

Record No. 4545.

Present, All the Justices.

The opinion states the case.

*Robert R. Gwathmey, III* and *Melvin Wallinger*, for the appellant.

*Louis S. Herrink, Jr.* and *S. W. Shelton*, for the appellee.

WHITTLE, J., delivered the opinion of the court.

Samuel W. Shelton, as "a resident, freeholder and tax payer" filed a bill for an injunction in the Circuit Court of Hanover County against the County School Board, in which he sought perpetually to enjoin the Board "from spending the proceeds" from a school bond issue.

The Board filed a demurrer and answer to the bill, and the case was submitted on the pleadings and a stipulation. The final decree overruled the demurrer and granted the relief prayed for, to which we awarded the Board an appeal.

The bill conceded that the proceedings authorizing the bond issue were regular and in accordance with the Virginia statutes, namely, §§ 22-168 to 22-178, inclusive, Code of Virginia, 1950. It was alleged, however, that in view of the law as it then existed and the wording of the ballot, the voters of Hanover County were asked to authorize or deny a bond issue for the construction and improvement of buildings, and the procurement of sites therefor "for segregated, or non-racially mixed public schools; and that by answering the question contained on the aforementioned ballot in the affirmative, a majority of the voters of Hanover County did authorize a bond issue * * * to promote segregated public schools and for that purpose only."

Continuing, the bill alleged: "Your complainant is further advised * * * that the County School Board of Hanover County intend to construct on the property sought to be condemned and on the other sites sought to be procured, public school buildings, in which to operate non-segregated, mixed or integrated public schools, such buildings, and the sites therefor, to be paid for from the proceeds of the bond issue authorized July 14, 1953. * * * (A)nd the operation in Hanover County of mixed schools, will be for a purpose other than that authorized by the voters of Hanover County on July 14, 1953. Your complainant is advised and so alleges that the County School Board of Hanover County will authorize and conduct only such types of public schools as are permitted by law; and that since some time in May, 1954, segregated, or non-mixed schools have been unlawful. Wherefore, your complainant prays that an injunction be issued restraining the * * * Board * * * from proceeding further * * * and that it be * * * perpetually enjoined from spending the proceeds of the aforementioned bond issue for any purpose other than that for which it was authorized by the voters of Hanover County * * *."

The demurrer filed by the Board challenged the bill's sufficiency in law, and its answer asserted "that in the election referred to therein held on July 14, 1953, the voters * * * were asked to authorize, or deny, a bond issue for the construction and improvement of buildings and the procurement of sites therefor and for other purposes as set forth in the ballot, to provide adequate facilities for the efficient and lawful operation and maintenance of public schools for white

and negro school children in the County of Hanover, and that * * * a majority of the voters * * * did authorize a bond issue * * * for the purpose of providing sufficient facilities for the efficient and lawful operation of public schools * * * for white and negro school children."

When the case was submitted on May 10, 1955, counsel for the Board requested that the record show the following stipulation: That the Board will use funds for any lawful purpose under and pursuant to the laws of Virginia; and that if a representative of the Board were to testify he would state that the Board plans to use the funds from the bond issue for substantially the same buildings and facilities as planned at the time the bond issue was voted. Other statements, not germane to the issue, were also included.

The proceedings authorizing the bond issue were made a part of the record. The official ballot read:

"Question: Shall Hanover County contract a loan in an amount of One Million ($1,000,000) Dollars and issue bonds therefor in that amount for the purpose of providing funds to supplement State School Construction Funds for the construction of school improvements in said County for white and negro school children, including the purchase of sites for school buildings, or additions to school buildings, the construction of school buildings, or additions to, or alterations of existing school buildings and the furnishing and equipping of school buildings or additions to school buildings. Said bonds, if authorized, shall run for a period not exceeding twenty years, and shall bear interest at such rate or rates not exceeding six per centum (6%) per annum, as may subsequently be prescribed by the School Board of Hanover County; and to authorize such tax by the Board of Supervisors as shall be sufficient to pay the principal and interest on said bonds as the same mature upon all the property and all persons subject to taxation in said County.

[ ] For Bond Issue—        [ ] Against Bond Issue."

On October 20, 1953, after the voters had approved the bond issue, the Circuit Court entered an order directing the School Board and the Board of Supervisors of the County to "proceed at their next respective meetings, or as soon thereafter as they may be advised, to carry out the wishes of the voters as expressed at said election, and to authorize the issuance of * * * bonds for the purposes as set forth in the order of this Court entered on 27 June, 1953, and in the official ballot of the aforesaid election." The purposes expressed in the order and those in the ballot were identical.

The decree appealed from quotes the official ballot and states "that on July 14, 1953, an election was held pursuant to the above order with the result that a majority of the electorate of Hanover County voted in the affirmative; that by voting in the affirmative on the aforementioned question, the voters of Hanover County authorized a bond issue for the purpose of providing funds for segregated schools; that as a result of a decision of the Supreme Court of the United States in *Brown* v. *Board of Education of Topeka, et al.*, 347 U. S. 483, 98 L. ed. 873, 74 S. Ct. 686, (1954), the operation of racially segregated schools is now unconstitutional and illegal; that as a result of the aforementioned decision of the Supreme Court of the United States any money which the County School Board of Hanover County now expends from the proceeds from the sale of said bonds for the construction of new school buildings, or for additions to, or alterations of existing school buildings, or for the furnishing and equipping of school buildings, will now be for a purpose other than that authorized by the voters of this County. The Court doth accordingly adjudge, order and decree that the defendant herein, The County School Board * * * be, and it is hereby perpetually enjoined from spending the proceeds from the aforementioned bond issue for the purpose of constructing school improvements, for purchasing sites for school buildings, or additions thereto, for making additions to, or alterations in existing school buildings, or for the furnishing and equipping of school buildings, or additions thereto, or for any other purpose, whether the proceeds from said bond issue now be in the hands of the defendant or be hereafter received by the defendant. The Court doth further adjudge, order and decree that the defendant herein be, and it is hereby perpetually enjoined from selling any bonds authorized by the aforementioned election of July 14, 1953, which remained unsold on May 13, 1955."

The Board's assignment of error which controls our disposition of the case reads: "Does the effect of the ruling of the Supreme Court of the United States in the case of *Brown* v. *Board of Education of Topeka, et al.*, 347 U. S. 483, 98 L. ed. 873, 74 S. Ct. 686 (1954), so change the purposes for which the school bonds were voted on July 14, 1953, in Hanover County, as to invalidate such bond issue?" This question must be answered in the negative.

The qualified electors voted the bonds in this instance "for the purpose of providing funds * * * for the construction of school improvements in said County for white and negro school children, in-

cluding the purchase of sites for school buildings or additions to school buildings, the construction of school buildings, or additions to, or alterations of existing school buildings, and the furnishing and equipping of school buildings, or additions to school buildings.".

Shelton does not question the *bona fides* of the School Board. He concedes that the Board will use the money for the purposes stated in the ballot and contained in the court order approving the bond issue. His contention is that when the electorate voted on the question submitted, under the Virginia Constitution (§ 140),[1] the only public schools lawful in Virginia were segregated schools, and that since the United States Supreme Court, by the decision in the *Brown* case, has made such [segregated] schools "unlawful", the proceeds from the bonds will, of necessity, be used for integrated public schools which were unlawful at the time of the election.

It is axiomatic that the proceeds from a bond issue cannot be used for purposes other than those substantially authorized. However, the record discloses that Hanover County was in desperate need of school improvements and in order to remedy the situation the bonds in question were voted. It being conceded that the proceeds from the bonds will be used for the purposes stated, the expenditure thereof becomes an administrative duty of the Board which neither the lower court nor this court has the right to interfere with. Therefore, the cited opinion of the Supreme Court is beside the point, and, irrespective of our views regarding the decision, it has no place in the determination of the question before us. *Board of Public Instruction* v. *State,* (Florida), 75 So. 2d 832; *Matlock* v. *Board of County Commissioners,* (Okla.), 281 P. 2d 169; *State of Florida, et al.* v. *Special Tax School District No. 1 of Dade County, Florida,* (Florida), 86 So. 2d 419.

The decree is reversed and the bill dismissed.

*Reversed and dismissed.*

---

[1] "§ 140. Mixed schools prohibited.—White and colored children shall not be taught in the same school."